1 | ADRIANOS FACCHETTI (S.B.N. 243213)
LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
2 | 301 East Colorado Boulevard, Suite 520
Pasadena, California 91101
3 | Telephone:  (626) 793-8607
Facsimile:   (626) 793-7293
4 | Email:        adrianos@facchettilaw.com

5 | AARON SCHUR (S.B.N. 229566)
JAMES DAIRE (S.B.N. 239637)
6 | YELP INC.
140 New Montgomery Street
7 | San Francisco, CA 94105
Telephone:  (415) 908-3801
8 | Facsimile:   (415) 615-0809
Email:        aschur@yelp.com
9 | Email:        jdaire@yelp.com

10 | Attorneys for Subpoenaed Party
YELP INC.
11

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 | SAN FRANCISCO DIVISION

15

16 | DR. MUHAMMAD MIRZA and
ALLIED MEDICAL AND DIAGNOSTIC
SERVICES, LLC,

CASE NO.: 21-mc-8077-TSH

17

18 | Subpoenaing Parties,
vs.

YELP INC.'S OPPOSITION TO MOTION
TO ENFORCE COMPLIANCE WITH
THIRD PARTY SUBPOENA

19 | YELP, INC.,

Date: June 3, 2021
20 | Subpoenaed Party.

Time: 10:00 am
Courtroom G, 15th Floor

21

Hon. Thomas S. Hixson

22
23
24
25
26
27
28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1

**TABLE OF CONTENTS**

2  Table of Authorities..................................................................................................................ii

3  I.       INTRODUCTION.........................................................................................................1

4  II.      BACKGROUND...........................................................................................................1

5  III.     LEGAL STANDARD....................................................................................................2

6  IV.      ARGUMENT.................................................................................................................3

7          A.       Subpoenaing Parties fail to establish that any of their claims rest on

8                   a "real evidentiary basis"...............................................................................3

9                   1.       Defamation per se...............................................................................5

10                  2.       Trade libel and tortious interference.................................................12

11         B.       The harm to consumer speech of requiring disclosure outweighs any supposed

12                  harm to Subpoenaing Parties...........................................................................12

13  V.      CONCLUSION............................................................................................................15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA

**TABLE OF AUTHORITIES**

*adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 CIV. 5635 LGS, 2013 WL 4838854, at *2 ......3

*Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011) ................................................. 4,12

*Art of Living Found. v. Does 1-10*, No. 10-CV-05022, 2011 WL 5444622 (N.D. Cal. Nov. 9,
    2011) ................................................................................................................................. 2,12,14

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners*, *LLC*, 151 F. Supp. 3d 287 (E.D.N.Y. 2015)..
    ............................................................................................................................................... 4

*Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y 2012) .....................................................5

*Brahms v. Carver*, 33 F. Supp. 3d 192 (E.D.N.Y. 2014 .............................................................. 6

*Brian v. Richardson*, 87 N.Y.2d 46  (1995)...........................................................................6,9,10

*Carbone v. Cable News Network, Inc.*, No. 1:16-CV-1720-ODE, 2017 WL 5244176, at *6 (N.D.
    Ga. Feb. 14, 2017) .............................................................................................................. 10

*Chaves v. Johnson* (1985) 230 Va. 112, 119 ............................................................................ 10

*Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) ............................2

*Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012) ........................................5

*Digital Sin, Inc. v. John Does 1-176*, 279 F.RD.  (S.D.N.Y. 2012) ..............................................4

*Dillon v. City of New York*, 261 A.D.2d 34, 38 (1999) ..................................................................5

*Doe v. 2theMart.com*, 140 F. Supp.2d 1088 (W.D. Wash. 2001) ................................................2

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005)......................................................................................4

*Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir. 1978) ........................................................................2

*Ganske v. Mensch*, No. 19-CV-6943 (RA), 2020 WL 4890423, (D.S.N.Y. Aug. 20, 2020) ....... 11

*Goetz v. Kunstler*, 164 Misc. 2d 557, 565, 625 (Sup. Ct. 1995) ...................................................5

*Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993) ............................................................... 6

*Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) ............................ 12

*Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d  (N.D. Cal. 2005)........................*Passim*

*Intellect Art Multimedia, Inc. v. Milewski*, 24 Misc. 3d 1248(A), 899 N.Y.S.2d 60 (Sup.Ct. 2009)
    ........................................................................................................................................... 17

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1  *Jain v. Sec. Indus. and Fin. Mkts. Ass'n*, No. 08 Civ. 6463, 2009 WL 3166684, at *9 (S.D.N.Y.

2     Sept. 28, 2009)................................................................................................................ 12

3  *Levitt v. Yelp! Inc.*, 765 F.3d 1123  (9th Cir. 2014) ................................................................ 18

4  *Luxpro v. Apple Inc.*, No. C 10-03058 JSW, 2011 WL 3566616, at *5 (N.D. Cal. Aug. 12, 2011)

5     ............................................................................................................................................ 9

6  *Mann v. Abel*, 10 N.Y.3d 271 (2008) ................................................................................6, 9,10

7  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995).......................................................... 2

8  *Mercy Health Services v. 1199 Health & Hum. Serv. Emps. Union*, 888 F. Supp. 828 (W.D. Mich

9     1995) ................................................................................................................................. 11

10  *Mirza v. Amar*, No. 20-CV-2699 (BMC), 2021 WL 148403, at *3 (E.D.N.Y. Jan. 15, 2021)

11     ...................................................................................................................................7,8,13

12  *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d (N.D. Cal. 2015) .............3,4,5,13

13  *Obi Pharma, Inc., v. Does 1-20*, No. 16CV2218 (BGS), 2017 WL 1520085 (S.D. Cal. Apr. 27,

14     2017 .................................................................................................................................. 13

15  *Penn Warranty Corp v. DiGiovanni*, 10 Misc.3d 998 (2005)................................................ 6,12

16  *PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *5 (N.D. Cal. Nov. 25,

17     2019) ............................................................................................................................. 3,4,13

18  *Rakovsky v. Washington Post*, 39 Misc.3d 1226(A) (Sup. Ct. 2013)......................................... 11

19  *Rejent v. Liberation Publications, Inc.*, 197 A.D.2d 240 (1994) ................................................ 9

20  *Romeo & Juliette Laser Hair Removal, Inc. v. AssaraI LLC*, No. 08-CV-0442, 2016 WL 815205,

21     at *9 (S.D.N.Y. 2016) ........................................................................................................ 13

22  *Sabharwal & Finkel*, *LLC* v. *Sorrell*, No. 155808/2012, 2013 WL 2155592, at *1 (N.Y. Sup. Ct.

23     May 9, 2013) ...................................................................................................................... 10

24  *Sandals Resorts Int'l Ltd v. Google, Inc.*, 86 A.D.3d 32 (2011)............................................. 5,6

25  *Torati v. Hodak*, 147 A.D.3d 502  (2017)................................................................................. 6

26  *Unique Sports Generation*, *Inc*. *v*. *LGH-III, LLC*, No. 03 CIV. 8324 JGK DF, 2005 WL 2414452,

27     at *9 (S.D.N.Y. Sept. 30, 2005................................................................................... 11,12

28  *United States v. United Foods*, 533 U.S.405 (2001) .................................................................. 5

-iii-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1

*Woodbridge Structured Funding LLC v. Pissed Consumer*, 125 A.D.3d 508 (2015)............. 7,8

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3        Yelp maintains a popular website and related mobile applications that allow users, free of

4   charge, to read and write reviews of local businesses. Subpoenaing Parties have brought this

5   motion against Yelp arising from a review of Dr. Mirza's medical practice. Specifically,

6   Subpoenaing Parties seek to compel information from Yelp that they hope will identify the

7   author of a review of Dr. Mirza's administration of Botox, and advance a defamation lawsuit

8   they launched eight months ago against a John Doe defendant in the U.S. District Court for the

9   Southern District of New York.

10        The Subpoenaing Parties' motion to compel should be denied because they are unable to

11   satisfy their burden of proof under *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969,

12   975 (N.D. Cal. 2005). The at-issue review is not actionable defamation, so Subpoenaing Parties

13   cannot offer any real evidentiary basis that the John Doe defendant engaged in wrongful conduct.

14   Nor can Subpoenaing Parties offer any evidence that the John Doe defendant caused them real

15   harm. In the only alleged evidence Subpoenaing Parties do submit—the review itself and two Dr.

16   Mirza affidavits—they don't even try to address harm. These defects, separately and

17   independently, warrant denial. And even setting aside these defects, the balance of harms here—

18   including the substantial risk that identification will chill speech as evidenced by Subpoenaing

19   Parties' conduct in other matters—overwhelmingly tips in favor of denial. As discussed in detail

20   below, the *Highfields* test weeds out poorly conceived lawsuits, like the underlying action here,

21   before they can disturb a consumer's First Amendment right to anonymous speech.

22

**II.     BACKGROUND**

23        Subpoenaing Parties seek to identify the author of a review posted on Yelp. The entirety

24   of the at-issue review is: "Worst experience I've ever had! Woke up looking like a

25   monster!!! Cheap product and he's absolutely not experienced nor does he care!!!!!" *See* Dkt.

26   No. 10-1, Declaration of James Daire ("Daire Decl."), Ex. A.

27        Subpoenaing Parties claim that this review is defamatory based on the reviewer's

28   assertions that Dr. Mirza uses "cheap product" and is "not experienced." Dkt. No. 1 at 8:24-9:5.

-1-

1   They filed a lawsuit against a John Doe defendant in the Southern District of New York on

2   August 11, 2020. Dkt. No. 1-2. The underlying lawsuit is the latest in a series of federal actions

3   that Dr. Mirza, alone or together with his associated entities, has filed against reviewers

4   dissatisfied with his services.  Since July 2018, Dr. Mirza has filed at least eleven such suits in

5   the U.S. District Courts for the Southern and Eastern Districts of New York. Daire Decl. Ex. E.

6   Subpoenaing Parties sought and, on September 2, 2020, received permission from the issuing

7   court in the Southern District of New York to serve an early subpoena on Yelp seeking "only the

8   name and address of Defendant." Dkt. No. 1-3 at 2. In so doing, the issuing court both granted-

9   in-part and denied-in-part Subpoenaing Parties' motion for an early subpoena. Daire Decl. Ex. B.

10  The issuing court did not consider whether Subpoenaing Parties could actually state a claim for

11  defamation or establish a prima facie case in support of their claim.  Dkt. No. 1-3 at 2-3.

12      Following entry of the order, on September 3, 2020, the Subpoenaing Parties issued a

13  subpoena to Yelp. Dkt. No. 1-4. On September 17, 2020, Yelp served timely written objections.

14  Dkt. No. 1-4. The parties met and conferred but ultimately came to impasse on December 11,

15  2020. Daire Decl. Ex. C; Dkt. No. 1-1, ¶16.

16  **III.    LEGAL STANDARD**

17      "It is well established that the First Amendment protects the right to anonymous speech."

18  *Art of Living Found. v. Does 1-10*, No. 10-CV-05022, 2011 WL 5444622, at *3 (N.D. Cal. Nov.

19  9, 2011) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). In particular,

20  Courts have recognized the chilling effect that subpoenas seeking to identify anonymous

21  speakers can have on the First Amendment interests that are implicated by such subpoenas. E.g.,

22  *Ealy v. Littlejohn*, 569 F.2d 219, 226-230 (5th Cir. 1978); *Doe v. 2theMart.com*, 140 F. Supp.2d

23  1088, 1093 (W.D. Wash. 2001). *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573, 578

24  (N.D. Cal. 1999) (emphasis added) ("People who have committed no wrong should be able to

25  participate online without fear that someone who wishes to harass or embarrass them can file a

26  frivolous lawsuit and thereby gain the power of the court's order to discover their identities.").

27      While the "right to anonymity is not absolute[,]" *Art of Living*, 2011 WL 5444622 at *4,

28  courts will not order disclosure of an anonymous defendant's identity based on mere allegations

-2-

1   or speculation. *In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at \*5

2   (N.D. Cal. Nov. 25, 2019) (citing *Highfields*, 385 F. Supp. 2d at 975 (N.D. Cal. 2005) ("It is not

3   enough for a plaintiff to simply plead and pray. Allegation and speculation are insufficient. The

4   standards that inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's

5   competing interests.").

6         Recognizing a defendant's right to remain anonymous, courts in this District have

7   adopted a two-part test in circumstances where the challenged speech consists of statements

8   which are critical of a business or its products. *Music Grp. Macao Com. Offshore Ltd. v. Does*,

9   82 F. Supp. 3d 979, 983 (N.D. Cal. 2015). "[I]n order to unmask an anonymous speaker, a

10   litigant must 'persuade[ ] the court that there is a real evidentiary basis for believing that the

11   defendant has engaged in wrongful conduct that has caused real harm to the interests of the

12   plaintiff." *Id.*, citing *Highfields*, 385 F. Supp. 2d at 975-76. If a plaintiff makes this showing, the

13   court must then "assess and compare the magnitude of harms that would be caused" to the

14   plaintiff's and defendant's competing interests if the court ordered disclosure of the speaker's

15   identity. *See id*.

16   **IV.   ARGUMENT**

17         **A.     Subpoenaing Parties fail to establish that any of their claims rest on a "real**

18                 **evidentiary basis".**

19         As an initial matter, Subpoenaing Parties' argument that they have satisfied the first

20   prong of *Highfields* because the issuing court granted their motion to allow an early subpoena

21   has no merit. *See* Mot. at 8:18. The issuing court in the Southern District of New York never

22   ruled that Subpoenaing Parties could actually state a claim for defamation or establish a prima

23   facie case in support of such a claim. The issuing court certainly was capable of deciding

24   whether or not Subpoenaing Parties had made a prima facie case, as it did in *adMarketplace, Inc.*

25   *v. Tee Support, Inc.*, No. 13 CIV. 5635 LGS, 2013 WL 4838854, at \*2 ("Plaintiff has made a

26   prima facie case regarding at least its defamation claim."), but the issuing court did not do so

27   here. Dkt. No. 1-3 at 2-3. Instead of addressing the purported prima facie elements of

28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1  Subpoenaing Parties' case, the issuing court ordered that Yelp could file a motion to quash in the

2  issuing court by October 20, 2020.[1] *Id.*

3      Moreover, Subpoenaing Parties have not provided any authority that suggests that the

4  standard for expedited discovery under Rule 26(f) is equivalent to the *Highfields* test. In contrast

5  to the "flexible standard of reasonableness and good cause" for expedited discovery under Rule

6  26(f), the first prong of *Highfields* requires the plaintiff to demonstrate that its claims rest on a

7  "real evidentiary basis." *Digital Sin, Inc. v. John Does 1-176*, 279 F.RD. 239, 241 (S.D.N.Y.

8  2012); *Highfields*, 385 F. Supp. 2d at 975-76. This means that "the plaintiff must adduce

9  *competent evidence*" of each fact that is "essential" to "at least one of [its] causes of action." *Id.*

10  at 975 (emphasis in original). The Ninth Circuit has described this standard as one of "middling

11  rigor," more demanding than the "good faith" or "motion to dismiss" standard that some courts

12  have used, and less demanding than the "most exacting" test enunciated in *Doe v. Cahill*, 884

13  A.2d 451 (Del. 2005), which requires a plaintiff to submit "sufficient evidence" of each element

14  of its claims "to survive a hypothetical motion for summary judgment." *In re Anonymous Online*

15  *Speakers*, 661 F.3d 1168, 1175-77 (9th Cir. 2011).

16      With respect to the first prong of the *Highfields* test, critical statements about business

17  practices and products are legitimate consumer speech, which is protected by the First

18  Amendment. *Music Grp. Macao Com. Offshore Ltd.*, 82 F. Supp. 3d at 985 (holding that critical

19  tweets about a business' practices and products constituted legitimate criticism and enjoyed First

20  Amendment protection). In *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *5, for example, a

21  customer of a home renovation business posted three critical tweets about the business, including

22  statements that it was possibly a "scam" and did "crappy construction," among other critical

23  statements. *Id.* at *6. Chief Magistrate Judge Spero held that the alleged defamatory statements

---

[1] Yelp did not file a motion in the issuing court because the Subpoenaing Parties and Yelp were still meeting and conferring in an attempt to resolve the matter without judicial intervention. They did not come to impasse until December 11, 2020, after which Yelp assumed Subpoenaing Parties had opted not to pursue the matter further. Dkt. No. 1-1, ¶16. Months passed before Subpoenaing Parties filed the motion in this Court on April 8, 2021. Dkt. No. 1.

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

were "not so much statements of fact but simply a 'rant' by a dissatisfied customer and therefore would be unlikely to cause real harm" to the business under *Highfields*. *See also Music Grp.*, 82 F. Supp. 3d at 985 (tweets critical of a business' practices "are views in which other members of the public may well be interested—and that defendant has a right to express anonymously.").[2] With the above principles and authorities in mind, Yelp analyzes each of Subpoenaing Parties' claims below under New York law.

### 1. Defamation per se[3]

The challenged statements are non-actionable opinion under New York law. A prima facie defamation per se claim under New York law requires "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1999). Courts in New York have consistently recognized that there "is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (citations omitted); *see also Goetz v. Kunstler*, 164 Misc. 2d 557, 565, 625 (Sup. Ct. 1995)

---

[2] Here, the at-issue review is also fully protected under the First Amendment because it constitutes non-commercial—*not* commercial—speech, which is a crucial distinction that courts often confuse in these kinds of cases. *See United States v. United Foods*, 533 U.S.405, 409 (2001) (commercial speech is "usually defined as speech that does no more than propose a commercial transaction"); *see also Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012) (phonebooks listing businesses are not commercial speech and are entitled to full protection under the First Amendment). On its face, Steven P.'s criticism has nothing to do with any proposed commercial transaction. It appears to be an after-the-fact patient review based on first-hand experience under Dr. Mirza's care—and Subpoenaing Parties do not contend otherwise.

[3] Plaintiff Allied Medical and Diagnostic Services, LLC, failed to produce any evidence of damages, which is required "where the plaintiff is a corporation." *Sandals Resorts Int'l Ltd v. Google, Inc.*, 86 A.D.3d 32, 39 (2011).

1   ("It is a paramount interest of a free society to assure that open and spirited discussion of matter

2   of public concern will not be chilled by the threat of litigation.").

3          A defamation action must be based on assertions of fact, rather than opinion. *See, e.g.*,

4   *Gross v. New York Times Co.*, 82 N.Y.2d 146 (1993). In determining whether a given statement

5   is a non-actionable opinion or an assertion of fact, a court will consider factors including "(1)

6   whether the specific language in issue has a precise meaning which is readily understood; (2)

7   whether the statements are capable of being proven true or false; and (3) whether either the full

8   context of the communication in which the statement appears or the broader social context and

9   surrounding circumstances are such as to signal. . . readers or listeners that what is being read or

10   heard is likely to be opinion, not fact." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (quoting *Brian*

11   *v. Richardson*, 87 N.Y.2d 46 51 (1995)).

12          "New York courts have consistently protected statements made in online forums as

13   statements of opinion rather than fact." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners*, *LLC*,

14   151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015); *Brahms v. Carver*, 33 F. Supp. 3d 192, 199

15   (E.D.N.Y. 2014) (finding that statement was non-actionable opinion where it was "made on

16   internet forum where people typically solicit and express opinions"). Courts treat such statements

17   as opinion, rather than fact, because of the "wide range of casual, emotive, and imprecise

18   speech" that often accompanies such communications. *Sandals*, 86 A.D.3d at 43-44. "In the

19   context of statements pertaining to issues of consumer advocacy, courts also have been loath to

20   stifle someone's criticism of goods or services. *Penn Warranty Corp v. DiGiovanni*, 10 Misc.3d

21   998, 1004 (2005) (citations omitted). Indeed, "[t]he Courts have recognized that personal opinion

22   about goods and services are a matter of legitimate public concern and protected speech." *Id.*

23          For example, in *Torati v. Hodak*, 147 A.D.3d 502, 503 (2017), the plaintiff sued for

24   defamation stemming from critical and anonymous comments posted on various consumer

25   websites, including that he was "incompetent and dishonest," a "disastrous business man," from

26   whom consumers should "[s]tay far away." The court rejected plaintiffs' claim because a

27   reasonable reader would understand that the author "was merely expressing his opinion based on

28   a negative business interaction with plaintiffs," based on the "[l]oose, figurative or hyperbolic'

-6-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

tone of the statements and the fact that they were posted anonymously on the Internet. Similarly, in *Intellect Art Multimedia, Inc. v. Milewski*, 24 Misc. 3d 1248(A), 899 N.Y.S.2d 60 (Sup.Ct. 2009), the defendant posted statements about a business to a consumer review website, stating that the business was a "100% bait and switch scam" and "all a joke and a scam that needs to be stopped." Again, the court dismissed the claim because the review, "when read in context, would be perceived by a reasonable person to be nothing more than a matter of personal opinion…Competing with an individual's right to protect one's own reputation is the constitutionally guaranteed right to free speech. One of the staples of a free society is that people should be able to speak freely. Consequently, statements that merely express opinion are not actionable as defamation, no matter how offensive, vituperative or unreasonable they may be." *Id* at *4.

In the highly analogous recent case of *Mirza v. Amar*, No. 20-CV-2699 (BMC), 2021 WL 148403, at *3 (E.D.N.Y. Jan. 15, 2021), the Subpoenaing Parties sued a different Yelp user for defamation under New York law, arising from the user's reviews of Dr. Mirza and his practice. There, the court denied Dr. Mirza's uncontested motion for a default judgment, on the grounds that the at-issue reviews were not actionable defamation. The Yelp reviewer there had accused Dr. Mirza of using "fugazzi" fillers (slang for "fake"); stated that he was not a "real" doctor; and that Dr. Mirza is a "sociopath." The *Amar* court held that the "context demonstrates that these are figurative statements meant to highlight defendant's dissatisfaction with Dr. Mirza and the procedure he performed on her" and denied Subpoenaing Parties' request for a default judgment.

Finally, in *Woodbridge Structured Funding LLC v. Pissed Consumer*, 125 A.D.3d 508 (2015), the plaintiff alleged a claim for defamation based a series of critical online postings about its business on a complaint-oriented website. The defendant criticized plaintiff for its "failure to fulfill an advertising promise to award prospective customers with a $500 gas card that included statements such as [plaintiff] 'Lie[s] To Their Clients' and 'will forget about you and . . . all the promises they made to you' once 'you sign on the dotted line.'" The Court of Appeal upheld the lower court's denial of a motion seeking pre-action discovery, reasoning that:

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY SUBPOENA

1
2
3
4
5

> Nothing in the petition identifies specific facts that are false and when the statements complained of are viewed in context, they suggest to a reasonable reader that the writer was a dissatisfied consumer who utilized respondent's consumers' grievance website to express an opinion. Although some of the statements are based on undisclosed, unfavorable facts known to the writer, the disgruntled tone, anonymous posting, and predominant use of statements that cannot be definitively proven true or false, supports the finding that the challenged statements are only susceptible of a nondefamatory meaning, grounded in opinion.

6

*Id*. at 508-09.

7          Here, the setting, general tenor, and language of the challenged statements compel the

8     conclusion that they are non-actionable opinion. Defendant posted the at-issue review to Yelp's

9     website. Yelp allows users to post consumer reviews about business and other service providers.

10    *See Levitt v. Yelp! Inc*., 765 F.3d 1123, 1126 (9th Cir. 2014) ("Today, individuals can share their

11    opinions with the entire world courtesy of a few taps on the keyboard. [Yelp] provides an online

12    forum on which its users express opinions as to services ranging from dog walkers to taco

13    trucks."). "Because Yelp reviews are used by consumers to provide their positive or negative

14    opinions of businesses, the context strongly signals to readers that the review merely reflects the

15    writer's opinions." *Mirza*, 2021 WL 148403, at *3. Additionally, the review contains hyperbole

16    and uses loose, figurative language. The reviewer states that their encounter with Dr. Mirza was

17    the "Worst experience" they "ever had" and that they "Woke up looking like a monster."

18    Obviously, the reviewer's statement was not meant to be literal. Rather, the use of this language

19    was a clear signal to the reader that the author was conveying their extreme dissatisfaction with

20    the outcome of their cosmetic procedure and their experience using Dr. Mirza's services.

21    Additionally, all of the sentences are punctuated with exclamation points, which are typically

22    used to indicate strong feelings. This further negates any impression that the author intended to

23    state facts, as opposed to opinions.

24          With respect to the alleged defamatory statements[4] themselves, the "Cheap product"

25

26

27

28

---

[4] To the extent Subpoenaing Parties argue that the reviews are based on "mixed opinions," (which Yelp does not concede) the review in this case is analogous to those at issue in *Woodbridge Structured Funding LLC*, 125 A.D.3d 508, at 509, which were found not to be actionable, although "some of the statements [were] based on undisclosed, unfavorable facts,"

-8-

1   statement cannot possibly be interpreted as a statement of fact. The word "cheap" is inherently

2   subjective and refers to the perceived value or quality of a thing. *See Luxpro v. Apple Inc.*, No. C

3   10-03058 JSW, 2011 WL 3566616, at *5 (N.D. Cal. Aug. 12, 2011) (observing that "If Luxpro's

4   claims were limited to allegations that Apple called its products "cheap," the Court could easily

5   find as a matter of law that such a statement would not be actionable."). "Cheap Product" does

6   not have a precise meaning and simply cannot be proven true or false. *Mann v. Abel*, 10 N.Y.3d

7   at 276 (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)). It is a pure opinion. Moreover,

8   the reviewer does not state any facts about the product. The reviewer does not state the name of

9   the product or why it is allegedly "Cheap." Nor does the reviewer compare it to any other

10  products. In context, it is apparent that Steve P. is dissatisfied with the outcome of their

11  procedure and conveying personal opinions on the matter. Whether Subpoenaing Parties'

12  products are cheap is no more verifiable than whether or not a restaurant's prices are justified by

13  the food quality.  It is a matter of subjective opinion that cannot be proven true or false, and is

14  not objective fact.

15       In their moving papers, Subpoenaing Parties make the far-fetched argument that "cheap

16  product" means that it is a "fake" product. In support of this argument, Subpoenaing Parties

17  point to Dr. Mirza's affidavit which states, "I understand the use of the word 'cheap' to mean

18  'fake.' The post is not true because I only use real, authentic products." Dkt. No.1-6, ¶4.  Further,

19  Dr. Mirza states that according to the Cambridge dictionary, "cheap" means that a product is of

20  low quality *and* low price. In his affidavit, Dr. Mirza states that all doctors only use one product,

21  and therefore argues that the statement that his product is "cheap" must necessarily be false *Id.* at

22  ¶¶6-9.

23       However, no amount of such mental gymnastics will change the fact that the review does

24  not say or even suggest that the product is inauthentic or fake. *Rejent v. Liberation Publications,*

25

26  because "the disgruntled tone, anonymous posting, and predominant use of statements that
27  cannot be definitively proven true or false" made them "only susceptible of a nondefamatory
    meaning, grounded in opinion."

28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1    *Inc.*, 197 A.D.2d 240, 242 (1994) ("[a] court should neither strain to place a particular

2    construction on the language complained of, nor should the court strain to interpret the words in

3    their mildest and most inoffensive sense, to hold them non-libelous."). More important,

4    Subpoenaing Parties' approach seeks to substitute how a disputed statement would be read by a

5    reasonable Yelp user (the correct standard), with how it could be read by a sharp-eyed lawyer

6    seeking to sustain a defamation claim (an incorrect standard). The correct standard is how the

7    statement would be understood by actual, reasonable readers aware of the forum and context in

8    which the statement is made. *See, e.g.*, *Mann*, 10 N.Y.3d at 276; *Brian*, 87 N.Y.2d at 51. In this

9    context, no reader could reasonably interpret the statements to be anything but the reviewer's

10   personal opinions.

11           As to the reviewer's assertion that Dr. Mirza is "absolutely not experienced," the law is

12   clear that such statements are matters of opinion and cannot be defamatory. *See Chaves v.*

13   *Johnson* (1985) 230 Va. 112, 119 ("a charge of inexperience is in its nature a relative statement,

14   depending for its import largely upon the speaker's viewpoint. A corporal might seem

15   inexperienced to a sergeant, but not to a private. The relative nature of such opinions is obvious

16   to anyone who hears them."); *Carbone v. Cable News Network, Inc.*, No. 1:16-CV-1720-ODE,

17   2017 WL 5244176, at *6 (N.D. Ga. Feb. 14, 2017) (assertion that medical center was "extremely

18   inexperienced at doing such complicated heart surgeries on newborns" cannot be defamatory; it

19   is "a matter of opinion and cannot be proven true or false for purposes of a defamation claim");

20   *see also Sabharwal & Finkel*, *LLC* v. *Sorrell*, No. 155808/2012, 2013 WL 2155592, at *1 (N.Y.

21   Sup. Ct. May 9, 2013) (assertion that lawyers were "inexpert" not defamatory). Indeed, the

22   statement that Dr. Mirza is "absolutely not experienced" is a figurative statement that is meant to

23   highlight defendant's dissatisfaction with Dr. Mirza and the procedure he performed on the

24   reviewer. Just like any other doctor who administers Botox, Dr, Mirza is undoubtedly "not

25   experienced" when compared to some practitioners, and experienced when compared to others.

26   But that does not transmogrify this reviewer's opinion regarding Dr. Mirza's level of experience

27   into objective fact.

28           Subpoenaing Parties cite to a number of cases, all of which are distinguishable, and none

-10-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1    of which involves the crucial context of consumer speech on internet websites. For example,

2    Plaintiff relies on *Rakovsky v. Washington Post*, 39 Misc.3d 1226(A) (Sup. Ct. 2013) in an

3    attempt to show that a statement about a lawyer's lack of experience may rise to the level of

4    defamation per se. However, *Rakovsky* is easily distinguished. There, the alleged defamatory

5    statement was the Washington Post's assertion that *the court had declared a mistrial due to the*

6    *lawyer's inexperience*. *Id*. This is a fact that may be proven true or false, unlike the subjective

7    and unsupported opinion that Dr. Mirza is "not experienced." Further, the nature and context of

8    the statements in the two cases could not be more different. In *Rakovsky*, the statements were

9    factual in nature and made by an internationally recognized newspaper where readers would

10   expect serious and sober articles containing statements of fact verified by editors and fact-

11   checkers, whereas, in sharp contrast, the statements at issue in this case are hyperbolic consumer

12   criticism posted to an online review website. *See also Ganske v. Mensch*, No. 19-CV-6943 (RA),

13   2020 WL 4890423, (D.S.N.Y. Aug. 20, 2020) (readers are less inclined to give defamatory

14   meaning to speech on the internet than to similar speech made in other contexts.). *Id*.

15           Subpoenaing Parties also cite *Mercy Health Services v. 1199 Health & Hum. Serv. Emps.*

16   *Union*, 888 F. Supp. 828 (W.D. Mich 1995), but they did not discuss the case in any detail and,

17   in any event, it is difficult to understand why they would believe it assists them. The case

18   involves a statement on a union banner that read: "THIS MEDICAL FACILITY IS FULL OF

19   RATS." The court held that the statement could not be construed as an opinion. The *Mercy* case

20   is nothing like this case and is inapplicable here.

21           Finally, plaintiff relies on *Unique Sports Generation*, *Inc*. *v*. *LGH-III, LLC*, No. 03 CIV.

22   8324 JGK DF, 2005 WL 2414452, at *9 (S.D.N.Y. Sept. 30, 2005). In *Unique*, defendant alleged

23   a claim of defamation (and other claims) against plaintiff based on statements that were allegedly

24   made at an apparel trading convention to customers and prospective customers. The alleged

25   defamatory statements were that the defendant's products were "fake and of relatively poor

26   quality, and that defendant was not an African-American owned business." *Unique* is

27   distinguishable because it did not involve statements made on a consumer review site by a

28   consumer, nor did the plaintiff use the terms "cheap" or "not experienced", nor was there any

-11-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1   indication that the plaintiff's statements contained hyperbole or loose, figurative language. The

2   context and the nature of the alleged statements are completely different than those in this case.

3   Moreover, unlike in *Unique*, Steve P. (the John Doe defendant here) never stated that the product

4   Dr. Mirza used was "fake." In short, Subpoenaing Parties simply cannot demonstrate that any of

5   the alleged defamatory statements are actionable.

6           **2.      Trade libel and tortious interference**

7           Subpoenaing Parties' claims for trade libel and tortious interference are based on the

8   exact same statements that purport to give rise to their defamation claim. Thus, plaintiff's

9   remaining claims fail for the same reasons the defamation claim fails. *Hengjun Chao v. Mount*

10  *Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (quoting *Jain v. Sec. Indus. and Fin. Mkts.*

11  *Ass'n*, No. 08 Civ. 6463, 2009 WL 3166684, at *9 (S.D.N.Y. Sept. 28, 2009)) (district court

12  correctly dismissed plaintiff's other tort claims as duplicative of his defamation claim where the

13  factual allegations underlying all claims were virtually identical). Separately, Subpoenaing

14  Parties' claims fail because they did not produce any evidence that they sustained proof of actual

15  monetary losses, which is required for trade libel. *Penn Warranty Corp v. DiGiovanni*, 10

16  Misc.3d at 1004.

17          Subpoenaing Parties failed to show that their claims rest on a "real evidentiary basis"

18  under the first prong of *Highfields*.

19          **B.      The harm to consumer speech of requiring disclosure outweighs any**

20                    **supposed harm to Subpoenaing Parties.**

21          The second prong of the *Highfields* requires the court to "compare the magnitude of the

22  harms that would be caused to the [plaintiffs' and defendants'] competing interests" that would

23  be caused by ordering that the defendant's identity be disclosed. *Highfields*, 385 F.Supp.2d at

24  976. "[T]he specific circumstances surrounding the speech serve to give context to the balancing

25  exercise." *Art of Living*, 2011 WL 5444622 at *5 (quoting *Anonymous Online Speakers*, 661

26  F.3d at 1177). Further, in making this assessment, the court must ask "whether disclosure of the

27  defendant's identity would deter other critics from exercising their First Amendment rights." *Art*

28  *of Living*, 2011 WL 5444622 at *7-*8 (citing *Highfields*, 385 F.Supp.2d at 980-81). Critical

-12-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1   statements about a business' practices and products, like the statements in this case, are

2   legitimate speech and are protected by the First Amendment. *Music Grp. Macao Com. Offshore*

3   *Ltd.*, 82 F. Supp. 3d at 985 (holding that critical tweets about a business' practices and products

4   constituted legitimate criticism); and   *In re PGS Home Co. Ltd.*, 2019 WL 6311407, at *5,

5   (holding that that the harm to plaintiff was outweighed by the First Amendment concerns related

6   to disclosing the speaker's identity because the statements were protected speech that "members

7   of the public may well be interested [in]—and that defendant has a right to express

8   anonymously.").

9            As in *Music Group* and *In re PGS*, the review at issue in this case is legitimate, protected

10   speech about a "successful and respected" medical practice (*See* Complaint at ¶10), which is a

11   matter of public concern, such that the harm to Subpoenaing Parties is outweighed by the

12   reviewer's right to anonymous speech. *Mirza*, 2021 WL 148403, at *3 (E.D.N.Y. Jan. 15, 2021)

13   (finding that critical statements about Dr. Mirza were "a matter of legitimate public concern")

14   (citing *Romeo & Juliette Laser Hair Removal, Inc. v. AssaraI LLC*, No. 08-CV-0442, 2016 WL

15   815205, at *9 (S.D.N.Y. 2016).

16            Although Subpoenaing Parties argue that they need to identify the Defendant simply to

17   proceed[5] with their case, no relief is generally awarded to plaintiffs until they come forward with

18   evidence in support of their claims.  Here, the only evidence that Subpoenaing Parties proffer is

19   the review itself, coupled with Dr. Mirza's two self-serving affidavits. That alleged evidence is

20   insufficient, both for the reasons described above and because Subpoenaing Parties have failed to

21   show any evidentiary basis that the at-issue review caused them real financial harm. Neither of

22

23   [5] In support of their second prong argument under *Highfields*, Subpoenaing Parties cite *Obi*
     *Pharma, Inc., v. Does 1-20*, No. 16CV2218 (BGS), 2017 WL 1520085 (S.D. Cal. Apr. 27, 2017),
24   but like so many cases they rely on, the facts are distinguishable. In *Obi*, the plaintiff supplied
     the court with evidence of defamatory statements of fact, evidence of falsity, and other evidence
25   that the false statements may have been intended to manipulate plaintiff's stock price and profit
     from short selling, *i.e.*, that the challenged speech was not legitimate, protected speech.
26   Subpoenaing Parties have not provided any such evidence here. To the contrary, all the evidence
     in the record points to the conclusion that Steve P.'s review is legitimate consumer speech. *Obi*
27   does not assist the Subpoenaing Parties.

28

-13-

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1    Dr. Mirza's affidavits even attempts to address any purported harm.  Dkt. Nos. 1-6, 1-7.

2    Subpoenaing Parties' lack of evidence of harm is, by itself, fatal to its motion under *Highfields*.[6]

3            In addition, even if Subpoenaing Parties had submitted alleged evidence of harm (they

4    did not), it would need to be balanced against the harm created by disclosure. Forcing Yelp to

5    disclose Steve P.'s identity will chill the usage of Yelp in the future by consumers that wish to

6    write anonymously about their experiences with local business. *Art of Living*, 2011 WL 5444622

7    at *7 ("[D]isclosure of [anonymous defendant's] identity here could discourage other bloggers

8    from engaging in lawful, critical speech . . ."); *Highfields*, 385 F.Supp.2d at 980-81 ("[I]f the

9    court were to enforce plaintiff's subpoena, the court would be enabling plaintiff to impose a

10   considerable price on defendant's use" of the website at issue, which "would include public

11   exposure of plaintiff's identity and the financial and other burdens of defending against a

12   multicount lawsuit."). This concern is especially significant here, given the sheer number of

13   lawsuits Dr. Mirza and his associated business have recently launched against his reviewers and

14   their attendant publicity. Daire Decl. Ex. E. A PACER search reveals that, since July 2018, Dr.

15   Mirza has filed at least eight such lawsuits in the Southern District of New York and at least

16   three in the Eastern District of New York, many against multiple defendants. *Id*. Dr. Mirza's

17   apparent modus operandi is to threaten his reviewers with the expense and stress of federal

18   litigation, then voluntarily dismiss the lawsuits if reviewers agree to delete their criticism of Dr.

19   Mirza and his practice. *Id*. This Court should not permit Subpoenaing Parties, and other like-

20   minded litigants to use the courts to chill the usage of legitimate consumer speech.

21   //

22   //

23

24   [6] If Subpoenaing Parties improperly try to submit new alleged evidence of harm for the first time
     in reply, such evidence would not be credible. Dozens of criticisms similar to the ones in the at-
25   issue review have been lodged against Dr. Mirza through the Better Business Bureau.  *See*
     https://www.bbb.org/us/nj/cedar-grove/profile/medical-doctor/mirza-aesthetics-0221-
26   90181446/complaints.  Vice Media produced a field piece on his practices because of his poor
     patient reviews.  https://video.vice.com/en_uk/video/one-of-yelps-worst-rated-plastic-surgeon-i-
27   got-work-done-botox/5ca3815abe40777ac20ff784?latest=1.  Any notion that one subjective Yelp
     review caused Subpoenaing Parties real harm lacks merit.
28

YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD PARTY
SUBPOENA

1   **V.      CONCLUSION**

2          Based on the foregoing, Yelp requests that the Court deny Subpoenaing Parties' motion

3   to compel the disclosure of the reviewer's identifying information in this case.

4

5   DATED:  April 22, 2021

6                                                    LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

7

8                                          BY: _Adrian Facchetti_

                                                       Adrianos Facchetti
9                                                    Attorney for YELP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-